IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FERNANDEZ S. MILLSAP,**<br><br>Petitioner,<br><br>**v.**<br><br>**KATHLEEN ALLISON, Warden,**<br><br>Respondent. | **Case No. 1:10-cv-02204 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Jeffrey D. Firestone of the office of the California Attorney General.

## I.     PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on August 22, 2006, of possession of a firearm by an ex-felon. (Clerk's Tr. at 171-72.) The trial court also found Petitioner had committed two prior felonies under California's Three Strikes Law and sentenced Petitioner to serve an indeterminate term of twenty-seven (27) years to life. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

1

District, which was denied on January 24, 2008. (Lodged Docs. 1-3.) On February 27, 2008, Petitioner filed a petition for review with the California Supreme Court. (Lodged Doc. 4.) The petition was summarily denied on April 9, 2008. (Lodged Doc. 5.)

Petitioner proceeded to file collateral appeals to his conviction in state court. Relevant to this petition, on May 14, 2009, Petitioner filed a state petition for writ of habeas corpus in the Kern County superior Court. (Lodged Doc. 10.) On June 17, 2009, the Superior Court denied the petition. (Lodged Doc. 11.) On August 2, 2009, Petitioner filed a state petition with the California Court of Appeals, Fifth Appellate District. (Lodged Doc. 12.)  The petition was denied on December 17, 2009. (Lodged Doc. 13.) Finally, Petitioner also filed a petition with the Supreme Court of California on December 24, 2009, which was denied on June 23, 2010. (Lodged Docs. 14-15.)

Petitioner filed the instant federal habeas petition on November 29, 2010. (Pet., ECF No. 1.) Petitioner raises a single claim of relief, namely that Petitioner's counsel was ineffective for failing investigate and file a suppression motion regarding the search that ultimately resulted in law enforcement discovering the firearm in his possession. (See Pet. at 59-62.)

Respondent filed an answer to the petition on August 22, 2011, and Petitioner filed a traverse on October 18, 2011. (Answer & Traverse, ECF Nos. 18, 22.)

## II.   STATEMENT OF THE FACTS[1]

In the spring of 2005, Priscilla Monroy began dating appellant, an ex-felon. He initially stayed with Monroy in her apartment while fixing up an apartment of his own. On June 1, 2005, Monroy, her toddler son, and her infant daughter moved into appellant's two-bedroom, second-floor apartment on Water Street. Monroy had seen appellant with a rifle when they first met. Appellant stored the rifle in a suitcase at that time. A month or two after moving into the apartment, Monroy saw appellant with the same rifle. On subsequent occasions, appellant wrapped the rifle in a towel and stored it variously under their mattress, under the kitchen sink, and to the side of the dishwasher. On one occasion, appellant became angry at Monroy, removed the towel, and pointed the rifle at her. Monroy did not own a gun, had no experience with firearms, and was afraid of

---

[1]The Fifth District Court of Appeal's summary of the facts in its January 24, 2008 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

owning a firearm because of her young children.

On October 19, 2005, appellant argued with Monroy and accused her of cheating on him. On October 22, 2005, appellant told Monroy he would hit her if she did not obey him. Monroy said they had had good times but the relationship became unhappy when he started abusing her. Monroy said "he was hurting me so much," she was tired of appellant's abuse and did not want her kids taken away. On the early afternoon of October 22, Monroy decided to end their relationship and move out of the Water Street apartment. When appellant left the apartment with Monroy's son, Monroy changed, put clothes on her infant daughter, grabbed a diaper bag, went to a stranger's house, and called the Kern County Sheriff's Department (KCSD).

About one hour after her call, KCSD Deputy Sheriffs McAdoo, Williams, and Moncur met Monroy about one block away from the apartment. Monroy told the deputies that appellant had a gun in the apartment. Deputies Williams and Moncur transported Monroy back to the apartment and McAdoo and his partner traveled in a separate vehicle to the apartment. Monroy, her friend, Loraine Tyler, and the deputies walked up a flight of stairs in the apartment complex. Monroy knocked on the door and she entered the apartment with Deputies Williams and Moncur. Appellant and Monroy's son were watching television together in the apartment and appellant invited everyone inside. When Deputy McAdoo entered, appellant was seated on a couch against the west wall of the living room. Appellant was facing eastward on the couch.

Deputy McAdoo said he and Deputy Moncur stayed in the living room with appellant while Deputy Williams assisted Monroy with her belongings in the back of the apartment. When the rifle could not be located in the master bedroom, Monroy advised Deputy McAdoo to look underneath the north end of the kitchen sink. McAdoo opened the doors to the kitchen sink cabinet but could not see the location of the rifle. He did see a number of household cleaning products directly under the sink. McAdoo peeked his head under the cabinet and into a cutout section of fiberboard. The cleaning products were located on the right side of the fiberboard and the rifle was located on the left side of the fiberboard. McAdoo characterized the cutout fiberboard as "that little half wall." The rifle was not locked or subject to any type of restraint. McAdoo seized the weapon, took it into the living room, and turned it over to Deputies Williams and Moncur.

The parties stipulated KCSD tested the rifle for latent fingerprints and no prints were located. The parties also stipulated that appellant had sustained a prior felony conviction.

(Lodged Doc. 3 at 3-5.)

## III.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the

1   Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

2   2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

3   suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

4   conviction challenged arises out of the Kern County Superior Court, which is located

5   within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

6   has jurisdiction over the action.

7       **B.**     **<u>Legal Standard of Review</u>**

8       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

9   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

10  filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>,

11  114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

12  the AEDPA; thus, it is governed by its provisions.

13      Under AEDPA, an application for a writ of habeas corpus by a person in custody

14  under a judgment of a state court may be granted only for violations of the Constitution

15  or laws of the United States. 28 U.S.C. § 2254(a); <u>Williams v. Taylor</u>, 529 U.S. at 375 n.

16  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

17  state court proceedings if the state court's adjudication of the claim:

18
19      (1) resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established federal law, as
        determined by the Supreme Court of the United States; or

20
21      (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the State
        court proceeding.

22  28 U.S.C. § 2254(d).

23          1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

24      A state court decision is "contrary to" federal law if it "applies a rule that

25  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

26  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

27  result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06.

28  "AEDPA does not require state and federal courts to wait for some nearly identical

4

1  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

2  even a general standard may be applied in an unreasonable manner" <u>Panetti v.</u>

3  <u>Quarterman</u>, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

4  "clearly established Federal law" requirement "does not demand more than a 'principle'

5  or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state

6  decision to be an unreasonable application of clearly established federal law under §

7  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

8  (or principles) to the issue before the state court.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-

9  71 (2003).  A state court decision will involve an "unreasonable application of" federal

10  law only if it is "objectively unreasonable." <u>Id.</u> at 75-76, quoting <u>Williams</u>, 529 U.S. at

11  409-10; <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002). In <u>Harrington v. Richter</u>, the

12  Court further stresses that "an *unreasonable* application of federal law is different from

13  an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing <u>Williams</u>, 529

14  U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

15  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

16  correctness of the state court's decision."  <u>Id.</u> at 786 (citing <u>Yarborough v. Alvarado</u>, 541

17  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

18  have in reading outcomes in case-by-case determinations."  <u>Id.</u>; <u>Renico v. Lett</u>, 130 S.

19  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

20  Federal law for a state court to decline to apply a specific legal rule that has not been

21  squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419

22  (2009), quoted by <u>Richter</u>, 131 S. Ct. at 786.

23          2.     <u>Review of State Decisions</u>

24          "Where there has been one reasoned state judgment rejecting a federal claim,

25  later unexplained orders upholding that judgment or rejecting the claim rest on the same

26  grounds." <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).  This is referred to as the

27  "look through" presumption.  <u>Id.</u> at 804; <u>Plascencia v. Alameida</u>, 467 F.3d 1190, 1198

28  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

1    unreasonable legal or factual conclusion, "does not require that there be an opinion from

2    the state court explaining the state court's reasoning." <u>Richter</u>, 131 S. Ct. at 784-85.

3    "Where a state court's decision is unaccompanied by an explanation, the habeas

4    petitioner's burden still must be met by showing there was no reasonable basis for the

5    state court to deny relief." <u>Id.</u> ("This Court now holds and reconfirms that § 2254(d) does

6    not require a state court to give reasons before its decision can be deemed to have been

7    'adjudicated on the merits.'").

8         <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

9    or merely a summary denial, the approach to evaluating unreasonableness under §

10   2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

11   or theories supported or, as here, could have supported, the state court's decision; then

12   it must ask whether it is possible fairminded jurists could disagree that those arguments

13   or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

14   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

15   was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

16   authority to issue the writ in cases where there is no possibility fairminded jurists could

17   disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put

18   it yet another way:

19            As a condition for obtaining habeas corpus relief from a federal
             court, a state prisoner must show that the state court's ruling on the claim
20           being presented in federal court was so lacking in justification that there
             was an error well understood and comprehended in existing law beyond
21           any possibility for fairminded disagreement.

22   <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

23   are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at

24   787. It follows from this consideration that § 2254(d) "complements the exhaustion

25   requirement and the doctrine of procedural bar to ensure that state proceedings are the

26   central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u>

27   (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

28   ///

3.     Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

IV.   **REVIEW OF PETITION**

A.     **Ineffective Assistance of Counsel**

Petitioner contends that he was deprived of his rights under the Sixth and Fourteenth Amendments of the United States Constitution to the effective assistance of counsel because his trial counsel failed to file a motion to suppress evidence.

1.     Law Applicable to Ineffective Assistance of Counsel Claims

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

1    below an objective standard of reasonableness, and must identify counsel's alleged acts

2    or omissions that were not the result of reasonable professional judgment considering

3    the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

4    (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

5    indulges a strong presumption that counsel's conduct falls within the wide range of

6    reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

7    Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

8          Second, the petitioner must demonstrate that "there is a reasonable probability

9    that, but for counsel's unprofessional errors, the result ... would have been different,"

10   Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so

11   egregious as to deprive defendant of a fair trial, one whose result is reliable. Id. at 687.

12   The Court must evaluate whether the entire trial was fundamentally unfair or unreliable

13   because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

14   States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

15         A court need not determine whether counsel's performance was deficient before

16   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

17   Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

18   deficiency that does not result in prejudice must necessarily fail. However, there are

19   certain instances which are legally presumed to result in prejudice, e.g., where there has

20   been an actual or constructive denial of the assistance of counsel or where the State has

21   interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

22   and n.25 (1984).

23         As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

24   standard for ineffective assistance of counsel in federal habeas is extremely difficult:

25                The pivotal question is whether the state court's application of the
     Strickland standard was unreasonable. This is different from asking
26   whether defense counsel's performance fell below Strickland's standard.
     Were that the inquiry, the analysis would be no different than if, for
27   example, this Court were adjudicating a Strickland claim on direct review
     of a criminal conviction in a United States district court. Under AEDPA,
28   though, it is a necessary premise that the two questions are different. For

1
2
3

purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

4
5
6
7
8
9

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

10   Harrington v. Richter, 131 S. Ct. at 785-86.

11   "It bears repeating that even a strong case for relief does not mean the state
12   court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §
13   2254(d) stops short of imposing a complete bar on federal court relitigation of claims
14   already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus
15   from a federal court, a state prisoner must show that the state court's ruling on the claim
16   being presented in federal court was so lacking in justification that there was an error
17   well understood and comprehended in existing law beyond any possibility for fairminded
18   disagreement." Id. at 786-87.

19   Accordingly, even if Petitioner presents a strong case of ineffective assistance of
20   counsel, this Court may only grant relief if no fair-minded jurist could agree on the
21   correctness of the state court decision.

22                    2.       State Court Decision

23   Petitioner presented this claim by way of a habeas petition to the Kern County
24   Superior Court. The claim was denied in a reasoned decision by the Superior Court and
25   summarily denied in subsequent habeas petitions by the California Court of Appeal and
26   California Supreme Court. (See Lodged Docs. 10-15.) Because the California Supreme
27   Court's opinion is summary in nature, this Court "looks through" that decision and
28   presumes it adopted the reasoning of the Kern County Superior Court, the last state

9

1   court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05

2   & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher

3   court agrees with lower court's reasoning where former affirms latter without discussion);

4   see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal

5   courts look to last reasoned state court opinion in determining whether state court's

6   rejection of petitioner's claims was contrary to or an unreasonable application of federal

7   law under 28 U.S.C. § 2254(d)(1)).

8        In denying Petitioner's claim, the Kern County Superior Court explained:

9        Petitioner … feels that his trial counsel failed to investigate the
10   matter, and failed to file a suppression motion under P.C. Section 1538.5.
     … As this court sees no merits in any of petitioner's contentions, this court
11   will deny the petition for writ of habeas corpus for reasons discussed
     below.

12        To demonstrate ineffectiveness of counsel, petitioner must
13   demonstrate that his counsel's representation fell below professional
     norms causing prejudice to him, which more probable than not, would
14   result in a different outcome. Strickland v. Washington (1984) 466 U.S.
     668, 694. Prejudice must be actual, and not a figment of petitioner's
15   imagination. In re Sixto (1989) 48 Cal.3d 1247, 1257.

16        Petitioner contends that his girlfriend was merely coming back to
     the apartment they shared to pick up her belongings on the night of
17   October 22, 2005. However, the appellate court paints a different picture.
     What was once a happy relationship became fraught with tension when
18   Priscilla Monroy became uneasy about the rifle petitioner had in the
     apartment. She feared harm to her children and herself. Petitioner became
19   both verbally and physically abusive, causing her to gather some of her
     belongings and seek assistance from a stranger and ultimately
20   telephoning the Kern County Sheriff for help.

21        When she returned to the apartment with the sheriff's deputies,
     petitioner was advised of her desire to collect her belongings and leave.
22   Petitioner did not object to their entry for that purpose. Once inside, law
     enforcement followed Monroy throughout the house. After obtaining her
23   written consent to search, the rifle was located underneath the sink in a
     place Monroy indicated it had been hidden on previous occasions by
24   petitioner.

25        Petitioner cites in support of his claim the decision handed down by
     the U. S. Supreme Court on March 22, 2006 in Georgia v. Randolph
26   (2006) 547 U.S. 103. Said case effectively carved out an exception to
     existing law as to the validity of consent to search a residence that may be
27   given by a co-occupant. The law, particularly in California, had been that
     co-occupants can consent to the search of a common residence even
28   without the consent and over the objection of the other. People v. Haskett
     (1982) 30 Cal. 3d 841,857. However, the U.S. Supreme Court held that a

warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident is not reasonable as to him on the basis of consent given to police by another resident. Georgia v. Randolph, supra, 123-124. Petitioner contends ineffective assistance of counsel in the failure to bring the suppression motion because he was present and expressly objected to the search.

In evaluating petitioner's contention, the first potential obstacle to his claim is that the search in petitioner's case occurred in 2005 and the aforesaid decision was not handed down until 2006. However, examination of the criminal file minute orders reveal he had a motions date set in his case after the decision in Georgia was rendered. As a result of a finding that petitioner was not competent to stand trial on March 17, 2006, criminal proceedings were suspended and petitioner was committed to Patton State hospital on April 4, 2006. Criminal proceedings were reinstated on May 31, 2006 and a new trial date was set for July 24, 2006. The court set a date of July 5, 2006 for any pretrial motions to be heard. As noted above, the Georgia v. Randolph decision was rendered on March 26, 2006. Examination of the criminal file reveals that a motion to suppress was not filed or ever made in the case.

We must next determine if the failure to file the motion resulted in prejudice to petitioner. Would he have likely prevailed? In establishing the particular exception to the co-resident consent issue, the Supreme Court made note of circumstances that could justify a search regardless of the express objection of a present resident. The facts in Georgia v. Randolph involved a domestic dispute. The court noted that entry into a residence to protect against domestic violence would still be valid as constituting exigent circumstances. Once in the residence they could seize any evidence in plain view or take any action supported by any consequent probable cause. Georgia v. Randolph, supra, 118-119. The court concluded: "Scott Randolph's refusal is clear, and nothing in the record justifies the search on grounds independent of Jane Randolph's consent." Id at 124.

Since there was no motion made in petitioner's case, there is no motion-record to examine, but there does exist the offense report and the preliminary hearing transcript in the criminal file and the appellate opinion detailing the trial evidence. Monroy called the sheriffs department to obtain protection in retrieving her belongings so she could leave. The deputies were advised that petitioner had access to a firearm and she feared him. After the deputies were allowed into the residence by petitioner, he advised them that he had a prior felony conviction and had served time in prison. As a result of said information, the deputies had probable cause to believe petitioner was committing a felony by being in possession of a firearm. At this point in time, exigent circumstances existed in the recognized potential for domestic violence and the deputies would have had probable cause justifying the search independent of Monroy's consent. Georgia v. Randolph, supra, 118-119.

More importantly, there is nothing in the offense report, transcripts of the preliminary hearing, or evidence adduced at trial to indicate that petitioner ever refused consent or objected to the search, as he now contends. For purposes of evaluating petitioner's attorney's performance, nowhere in the petition is it alleged that petitioner advised his attorney that he objected to the search so as to put him on notice that grounds for a

1  motion to suppress might exist.

2         Consequently, petitioner has failed to establish that his attorney
   was deficient in his performance or that he was prejudiced by the failure to
3  bring the motion to suppress evidence. Petitioner received effective
   assistance of counsel. [¶] …

4  (Lodged Doc. 11 at 2-4.)

5         3.   <u>Analysis</u>

6         When the Sixth Amendment ineffective assistance of counsel claim is rooted in

7  defense counsel's failure to litigate a Fourth Amendment issue, as it is here, Petitioner

8  must show that (1) the overlooked motion to suppress would have been meritorious and

9  (2) there is a reasonable probability that the jury would have reached a different verdict

10 absent the introduction of the unlawful evidence. <u>Kimmelman v. Morrison</u>, 477 U.S. 365,

11 375  (1986); <u>Ortiz-Sandoval v. Clarke</u>, 323 F.3d 1165, 1170 (9th Cir. 2003).

12        Here, providing the state court decision with appropriate deference, fair-minded

13 jurists  could  disagree  whether  counsel  fell  below  an  objective  standard  of

14 reasonableness, or, alternatively, that Petitioner was prejudiced by counsel's conduct.

15 Petitioner contends that law enforcement searched Petitioner's residence without his

16 consent in violation of <u>Georgia v. Randolph</u>, 547 U.S. 103 (2006). The state court held

17 that it was not likely a suppression motion would have been granted because Petitioner,

18 despite his protestations, presented no evidence that he objected to the search and

19 there were exigent circumstances that allowed for a warrantless search.

20        Petitioner presents arguments in rebuttal to the finding of the state court.

21 Specifically, Petitioner contends that he did not consent to the search and that there was

22 no exigency based on danger to the victim because Petitioner's girlfriend was not at the

23 residence at the time she called law enforcement. Whether a suppression motion would

24 have been granted is not entirely clear. However, as fair-minded jurists could agree on

25 the correctness of the state court decision that the motion would be denied, this Court

26 cannot find that Petitioner is entitled to habeas corpus relief.

27        Moreover, Petitioner has not made a legitimate argument that he was prejudiced

28 by the failure of counsel to bring a suppression motion. Even if the physical evidence of

1  the rifle was suppressed, Petitioner's former girlfriend testified at trial that Petitioner had

2  the rifle in his possession during the time that they were dating, and that Petitioner had

3  even pointed the rifle at her during a dispute. (See Rep. Tr. at 34-48.) Her testimony

4  alone may very well have convinced a jury beyond a reasonable doubt that Petitioner

5  was in possession of a firearm. Accordingly, Petitioner has not shown that there was a

6  reasonable probability of a different verdict absent the introduction of the unlawful

7  evidence.

8       The state court did not apply any federal law in a manner that was contrary to, or

9  involved an unreasonable application of, the rule in Strickland, or that it based its holding

10  on an unreasonable determination of the facts in light of the evidence presented. 28

11  U.S.C. § 2254(d). Accordingly, it is recommended that Petitioner's claim for relief be

12  denied.

13  **V.    RECOMMENDATION**

14       Accordingly, it is hereby recommended that the petition for a writ of habeas

15  corpus be DENIED with prejudice.

16       This Findings and Recommendation is submitted to the assigned District Judge,

17  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

18  being served with the Findings and Recommendation, any party may file written

19  objections with the Court and serve a copy on all parties. Such a document should be

20  captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

21  to the objections shall be served and filed within fourteen (14) days after service of the

22  objections.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

13

1   The parties are advised that failure to file objections within the specified time may

2   waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th

3   Cir. 1991).

4

5   IT IS SO ORDERED.

6   Dated:   <u>June 24, 2013</u>         <u>/s/ Michael J. Seng</u>

7                                 UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28